IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-00225-DDD-STV

DUSTIN HARRISON,

    Plaintiff,

v.

TROY SARDI, in his individual capacity,
MICHAEL JUDD, in his individual capacity,

    Defendants.

## DEFENDANT JUDD'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S COMPLAINT

Defendant Michael Judd ("Officer Judd"), by and through the office of the Colorado Attorney General and the undersigned assistant attorneys general, moves for partial dismissal of Plaintiff Dustin Harrison's Complaint [Doc. No. 1] under Federal Rule of Civil Procedure 12(b)(6). In support of dismissal, Defendant states as follows:

## CERTIFICATE OF CONFERRAL

The undersigned certifies that they conferred with counsel for Plaintiff via telephone on March 25, 2025. Plaintiff opposes the relief requested herein.

## INTRODUCTION

As asserted in the Complaint, Doc. No. 1,[1] on the morning of May 13, 2024, Colorado Division of Parks and Wildlife ("CDPW") Officer Michael Judd encountered an abandoned vehicle near the entrance of Mueller State Park in Teller County, Colorado. Officer Judd requested a tow truck and began conducting a plain-view search of the vehicle to inventory the vehicle and complete a tow report. Plaintiff Dustin Harrison observed Officer Judd conducting the search as he was driving past the park entrance on Colorado State Highway 67 South. Harrison had no connection to the abandoned vehicle, but believing Officer Judd's search was illegal, parked his truck and began filming Officer Judd with his cell phone. Harrison approached Officer Judd and repeatedly questioned him about the legality of the search. When Harrison refused to step away from Judd so Judd could safely complete his vehicle inventory, Judd called on his dispatch radio for law enforcement cover. A few minutes letter, Teller County Sheriff's Deputy Troy Sardi

---

[1] The facts described in the Introduction are taken from the Complaint.

arrived and instructed Harrison to return to his car. Harrison refused, and Sardi arrested Harrison for obstructing a peace officer.

Harrison now brings this lawsuit against Officer Judd and Deputy Sardi for alleged violations of his civil rights under federal and state law. Specifically, Harrison asserts claims for (1) violation of his free speech rights, (2) retaliation, (3) unlawful arrest, (4) unlawful search, and (5) malicious prosecution under 42 U.S.C. § 1983 and the Enhance Law Enforcement Integrity Act (ELEIA), C.R.S. § 13-21-131.

Plaintiff's state law claims against Officer Judd must be dismissed because CDPW officers, such as Officer Judd, are not subject to suit under C.R.S. § 13-21-131.[2] Indeed, a Colorado state court has already addressed the dispositive issue in this Motion and concluded that ELEIA does not apply to CDPW officers. *See* Order dated October 31, 2024, *Colorado v. Davison*, Arapahoe County District Court Case No. 24CV30980, attached as **Exhibit A**.

---

[2] In this Motion, Officer Judd seeks dismissal of Harrison's state-law claims brought pursuant to C.R.S. § 13-21-131 (Claim 3, Claim 4, Claim 7, Claim 8, and Claim 10). Officer Judd is not seeking dismissal of Harrison's 42 U.S.C. § 1983 claims at this time (Claim 1, Claim 2, Claim 5, Claim 6, and Claim 9), and is filing a partial answer to those claims contemporaneously with this Motion.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege a "plausible" claim for relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While courts accept well-pled factual allegations as true, legal conclusions couched as a factual allegation need not be accepted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim may be dismissed "either because it asserts a legal theory not cognizable as a matter of law or because the claim fails to allege sufficient facts to support a cognizable legal claim." *Essex Ins. Co. v. Tyler*, 309 F. Supp. 2d 1270, 1271 (D. Colo. 2004).

## RELEVANT ALLEGATIONS

Plaintiff's Complaint alleges that "On May 13, 2024, Plaintiff Dustin Harrison was driving past the entrance to Mueller State Park on Colorado State Highway 67 South in Teller County, Colorado, when he saw Colorado Parks & Wildlife ("CDPW") Officer Defendant Michael Judd searching a parked vehicle." Doc. No. 1, ¶ 1. Plaintiff further alleges that "[a]t all relevant times, Defendant Judd was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer for CDPW." *Id.*, ¶ 5.

# ARGUMENT

## I. Harrison's state law claims must be dismissed because CDPW officers are not subject to suit under C.R.S. § 13-21-131.

Harrison fails to assert cognizable claims against Officer Judd under C.R.S. § 13-21-131 because CDPW officers employed by the State of Colorado are not "peace officers" subject to suit under ELEIA. Because it is undisputed that Officer Judd was a CDPW officer employed by the State of Colorado at the time of the events forming the basis of Harrison's Complaint, Officer Judd is not subject to Harrison's ELEIA claims. Accordingly, Harrison's claims against Officer Judd under C.R.S. § 13-21-131 must be dismissed with prejudice.

### A. Principles of statutory interpretation

A court's "primary purpose" in interpreting a statute "is to ascertain and give effect to the legislature's intent." *McCoy v. People*, 442 P.3d 379, 389 (Colo. 2019). To do this, courts first look at the statute's text and give its words and phrases their plain and ordinary meanings. *Id*. A court also considers the entire statutory scheme to give "consistent, harmonious, and sensible effect to all of its parts," and "must avoid constructions that would render any words or phrases superfluous or lead to illogical or absurd results." *Id*.

"When the legislature defines a term in a statute, statutory construction requires that the term be given its statutory meaning." *R.E.N. v. City of Colo.*

5

*Springs*, 823 P.2d 1359, 1364 (Colo. 1992). Courts must apply the statutory definition to the term whenever it appears in the statute, unless a contrary intention plainly exists. *Id*. The "statutory definition of the term excludes unstated meanings of that term." *Meese v. Keene*, 481 U.S. 465, 484 (1987).

If a term lacks a statutory definition, courts construe the term in accordance with its ordinary meaning and may consider a definition in a recognized dictionary. *Cowen v. People*, 431 P.3d 215, 218-19 (Colo. 2018).

If the statute is unambiguous, the reviewing court will apply it as written. *McCoy*, 442 P.3d at 389. If, however, the statute is ambiguous, the court may consider extrinsic aids to statutory construction, including the statute's legislative history, to resolve the ambiguity. *Id.*; *Cowen*, 431 P.3d at 218. "A statute is ambiguous when it is reasonably susceptible of multiple interpretations." *McCoy*, 442 P.3d at 389.

### B. The plain language of ELEIA excludes CDPW officers from its limited definition of "peace officer."

In 2020, the Colorado General Assembly passed ELEIA, or "S.B.20-217," which authorizes a civil cause of action for the deprivation of constitutional rights by certain peace officers, in addition to imposing oversight requirements on certain peace officers. *See* C.R.S. § 13-21-131 and C.R.S. § 24-31-901 to 907. Section 13-21-131 provides:

> A peace officer, as defined in section 24-31-901 (3), who, under color of
> law, subjects or causes to be subjected, including failing to intervene,
> any other person to the deprivation of any individual rights that create
> binding obligations on government actors secured by the bill of rights,
> article II of the state constitution, is liable to the injured party for legal
> or equitable relief or any other appropriate relief.

C.R.S. § 13-21-131(1). Section 24-31-901(3) in turn defines a "Peace officer," as: "any person *employed by a political subdivision* of the state required to be certified by the P.O.S.T. board pursuant to section 16-2.5-102, a Colorado state patrol officer as described in section 16-2.5-114, and any noncertified deputy sheriff as described in section 16-2.5-103(2)." C.R.S. § 24-31-901(3) (emphasis added). Thus, the only peace officers who are subject to liability under section 13-21-131 are those three categories of peace officers defined in section 24-31-901(3). *R.E.N.*, 823 P.2d at 1364 (courts must apply statutory definitions of terms). None of these categories apply to CDPW officers.

First, CDPW officers are not "employed by a political subdivision of the state." While ELEIA does not define "political subdivision of the state," the plain meaning of that phrase refers to a division of local government. *Political Subdivision*, BLACK'S LAW DICTIONARY, (12th ed. 2024), *available at* Westlaw (defining political subdivision as "[a] division of a state that exists primarily to discharge some function of *local* government.") (emphasis added). This also aligns with other statutory provisions within the Colorado Revised Statutes that denote a

"local" entity, and not a state-level division or agency. *See, e.g.*, C.R.S. § 24-72-202(5) (defining "political subdivision" under the Colorado Open Records Act as "every county, city and county, city, town, school district," and various other subdivisions, but not including a state agency or department); C.R.S. § 24-6-402(1)(c) (similarly defining "political subdivision" under Colorado's Open Meeting laws); C.R.S. § 29-1-202(2) (defining "political subdivision" as a "county, city and county, city, town, service authority, school district," and various other subdivisions, but not including a state agency or department).

Officer Judd was, at all relevant times, employed by the State of Colorado as a CDPW officer. *See* Doc. No. 1, ¶¶ 1, 5. CDPW is a division of the Colorado Department of Natural Resources ("Department"), *see* C.R.S. § 24-33-104(1)(h); C.R.S. § 24-1-124(3)(k)(II)(A), C.R.S. § 33-9-104, which is a "principal department" of the state. *See* C.R.S. § 24-1-110(1)(n); C.R.S. § 24-33-101(1). Several statutes reinforce that CDPW is part of the state government. CDPW is identified as an agency under state law. *See* C.R.S.§ 24-4-102(3) (defining "agency" as including divisions). CDPW is responsible for performing duties and functions of the state. *See* C.R.S. § 33-9-104(2) (describing CDPW's powers, duties, and functions as specified in Title 33); C.R.S. § 33-1-101 (describing the state's interest in protecting and preserving the wildlife "for the use, benefit, and enjoyment of the people of this state and its visitors."); C.R.S. § 33-6-101(1) (authorizing CDPW officers to enforce

8

certain state laws). Additionally, CDPW is a "type 1 entity," that is "administered under the direction and supervision" of the Department. *See* C.R.S. § 24-1-105(1)(b); C.R.S. § 33-9-104(2). Finally, the Department and CDPW were created under the Administrative Organization Act of 1968, C.R.S. § 24-1-124(1), -124(3)(k)(II)(A), which sought to create an "orderly organizational structure of *state* government." C.R.S. § 24-1-101(1) (emphasis added). For these reasons, CDPW officers are not "employed by a political subdivision of the state." They are employed by the state itself.

CDPW officers are also not Colorado State Patrol officers. *See* C.R.S. § 16-2.5-114. The fact that section 24-31-901(3) specifically identifies Colorado State Patrol officers as a separate category of individuals included in the definition of "peace officer" means that the General Assembly did not intend for peace officers employed by state agencies other than State Patrol to be covered. *See McCoy*, 442 P.3d at 389 (courts construe statutes to effectuate the General Assembly's intent by looking to the plain language and avoiding "constructions that would render any words or phrases superfluous or lead to illogical or absurd results").

And finally, CDPW officers do not qualify as noncertified deputy sheriffs. *See* C.R.S. § 16-2.5-103(2) (explaining the term means "a peace officer *employed by a county or city and county*") (emphasis added).

Accordingly, ELEIA's plain language excludes CDPW officers from the limited definition of "peace officer" under C.R.S. § 24-31-901(3). *See* Exhibit A (*Davison* Order, p. 6) ("The clear language of the statute leads to the conclusion that [ELEIA] was not meant to apply to CPW."). Thus, Plaintiff's ELEIA claims must fail.

### C. The legislative history supports the conclusion that CDPW officers are not "peace officers" under ELEIA.

By its plain language, the definition of "peace officer" under C.R.S. § 24-31-901(3) does not apply to CDPW officers. But even if the statute were ambiguous, the legislative history of C.R.S. § 24-31-901 supports the statutory text.

When S.B. 20-217 was introduced, it defined "peace officer" broadly to mean "a person included in the provisions of Article 2.5 of Title 16." S.B. 20-217, 72nd Gen. Assem., Second Reg. Sess. (Colo. 2020) (as introduced on June 3, 2020), attached as **Exhibit B**, p. 3, lines 12-13. This expansive definition encompassed all state law enforcement officers, including CDPW officers, who are among those categories of peace officers identified in Article 2.5 of Title 16. *See* C.R.S. § 16-2.5-116; C.R.S. § 16-2.5-117.

To address concerns over the cost and scope of the officers included, subsequent amendments limited the definition of peace officer to the categories in the final version of the statute. *See* SB217_L.014, 72nd Gen. Assem., Second Reg.

10

Sess. (Colo. 2020) (amending the definition of "peace officer" under C.R.S. § 24-31-901(3) to include "any person employed by a political subdivision of the state required to be certified by the P.O.S.T. board pursuant to section 16-2.5-102 and any noncertified deputy sheriff as described in section 16-2.5-103(2)"), attached as **Exhibit C,** lines 1-6; SB217_L.084, 72nd Gen. Assem., Second Reg. Sess. (Colo. 2020) (amending the definition of "peace officer" under C.R.S. § 24-31-901(3) to also include "a Colorado state patrol officer as described in Section 16-2.5-114"), attached as **Exhibit D**, lines 7-10. Discussion of the amendment to include Colorado State Patrol in the definition of "peace officer" (Amendment L.084), demonstrates the legislature's intent to exclude all other state-level agencies from ELEIA's application. *See* Colorado Senate Hearing on SB20-217, 72nd Gen. Assem., Second Reg. Sess., Hearing at 3:24pm (June 8, 2020).[3] Senator Fields, who offered the amendment, emphasized that it reduced the revised fiscal note by removing S.B. 20-217's application to certain state agencies, such as corrections, human services, law department, *natural resources*, public safety, and revenue. *Id.* at 3:26 p.m. Senator Gardner reiterated that, although all state peace officers were originally added to

---

[3] Available at https://sg001-harmony.sliq.net/00327/Harmony/en/PowerBrowser/PowerBrowserV2/20241031/73/5502 (last visited 3/26/2025).

S.B. 20-2017, this amendment narrowed the application to Colorado State Patrol officers. *Id.* at 3:27 p.m. This amendment passed and the adopted language appears in the final version of section 24-31-901(3). *Id.* at 3:28 p.m. Thus, while peace officers employed by state agencies other than Colorado State Patrol, such as those employed by CDPW, were initially included with the scope of ELEIA, they were intentionally excluded in the final legislation. In other words, the legislative history supports ELEIA's plain language, which limits the definition of "peace officer," in relevant part, to those employed by a political subdivision of the state.

Based on the plain language and legislative history, CDPW officers are not subject to the provisions of ELEIA. Thus, Harrison has failed to state an ELEIA claim against Officer Judd and his state law claims must be dismissed with prejudice.

## CONCLUSION

For these reasons, this Court should dismiss Plaintiff's Third, Fourth, Seventh, Eighth, and Tenth Claims for Relief under Fed. R. Civ. P. 12(b)(6).

Respectfully submitted this 27th day of March 2025.

        PHILIP J. WEISER
        Attorney General

        s/ *Elizabeth Phillips*
        ELIZABETH PHILLIPS*
        MICHAEL PASSINT*
        Assistant Attorneys General
        Civil Litigation & Employment Law Section
        Tort Litigation Unit
        Ralph L. Carr Colorado Judicial Center
        1300 Broadway, 10th Floor
        Denver, Colorado 80203
        Telephone: (720) 508-6000
        Facsimile: (720) 508-6032
        Elizabeth.phillips@coag.gov
        Michael.passint@coag,gov
        *Counsel of Record

**I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).**

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of March 2025, I electronically filed the foregoing DEFENDANT JUDD'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S COMPLAINT with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all entered parties.

*s/Denise Munger*